UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| GEORGE WINGATE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. # 18-cv-_____ |
| | ) |
| S. A. FULFORD, | ) |
| Stafford County Sheriff's Office | ) |
| 1225 Courthouse Road | ) |
| Stafford, VA  22554 | ) |
| | ) |
| Defendant. | ) |

COMPLAINT

Preliminary and Jurisdictional Statement

1. Plaintiff George Wingate is an African American man who, while experiencing roadside engine difficulties, was detained, interrogated and ultimately arrested by a Stafford County deputy sheriff because he declined to give his name notwithstanding that the deputy repeatedly told him that he was not being charged with any offense and not suspected of any criminal wrongdoing.  The deputy's actions and their consequences exemplify the risks of driving while black.  This case arises under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. §1983.  This court has jurisdiction under 28 U.S.C. §1331.  The court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Mr. Wingate's claims for false arrest and malicious prosecution against the deputy, as they arise out of the facts giving rise to his federal claims.

Parties

2. Plaintiff George Wingate is 27 years old. He is African-American. He lives in Alexandria, Virginia.

3. Defendant S. A. Fulford is and at all relevant times was a deputy sheriff in Stafford County, Virginia. He is white. He is sued in his individual capacity.

Claim for Relief

4. In the early morning of April 14, 2017, Mr. Wingate was lawfully and appropriately driving his licensed and registered car in Stafford County when his "check engine" light came on. Mr. Wingate heeded this warning, pulled his car completely off the road onto a parking space adjacent to a local business (which was closed), turned off the engine, lifted the hood of his car to examine the engine and let it cool, and began reading the owner's manual in an attempt to learn why the light had come on.

5. While Mr. Wingate was reading his owner's manual, Dep. Fulford pulled up behind Mr. Wingate's car. Dep. Fulford did not stop because he suspected Mr. Wingate of any wrongdoing, but to learn if Mr. Wingate required assistance.

6. The ensuing encounter between Dep. Fulford and Mr. Wingate was recorded on the dash-cam of Dep. Fulford's car. A copy of the resulting video appears on You Tube at "Wingate v. Fulford" or https://youtu.be/jlCed7FKGvU. The contents of this video are incorporated herein by reference.

Facts Material to Counts I-III

7. While appreciating the offer of assistance, Mr. Wingate did not require any. He was prepared to secure other assistance if needed, or to drive home if necessary with his engine light on.

8. Dep. Fulford nevertheless saw fit to demand that Mr. Wingate identify himself. He then advised Mr. Wingate that he was not free to leave unless and until he did so. *See*, video at 0:41, 0:48, 0:52, 1:55 and 3:27.

9. Dating back at least forty years, it has been settled law that the Fourth Amendment forbids the involuntary detention of a person for refusing to identify himself or herself to a law enforcement officer if the officer has no reason to suspect possible criminal wrongdoing. No officer, including Dep, Fulford, could reasonably have believed that it was constitutionally permissible to detain or arrest Mr. Wingate by reason of his refusal to identify himself.

10. Mr. Wingate was aware of his rights. He was also aware that he was an African-American man being wrongfully required to identify himself to a white deputy who had confirmed to him that he had done nothing wrong and was not suspected of having done anything wrong. Mr. Wingate declined to identify himself.

11. Dep. Fulford was offended by Mr. Wingate's refusal to identify himself, deeming it, on information and belief, contempt-of-cop. His subsequent excess is incomprehensible otherwise.

12. Dep. Fulford thereupon arrested Mr. Wingate for failing to identify himself, falsely telling him that this constituted a crime. (Video at 4:40, 5:10).

13. In due course, Mr. Wingate appeared in court on Dep. Fulford's charge brought against him of failure to give his name. Granting the prosecution's motion for a *nolle prosequi,* the presiding judge added in his own handwriting, in the court's record, that the "Commonwealth will not bring [this action] again."

14. Mr. Wingate had, and to date has, no criminal record whatsoever other than that arising from the events complained of herein. He suffered embarrassment, humiliation, and mental distress at having been arrested for no reason at all.

15. In addition to the routine consequences of a false arrest set forth above, Mr. Wingate suffered severe mental anguish from the fact that what happened to him exemplified problems facing law-abiding African-American men in their dealings with law enforcement: something he had to explain to explain to his children for their own safety. He sought and obtained mental health counseling to deal with his mental pain and suffering arising from this aspect of his arrest for refusing to identify himself.

Facts Material to Counts IV & V

16. Having been improperly arrested for failing to provide his name, Mr. Wingate became fearful that he might be subjected to further violations of his rights, including physical abuse. These fears were amplified when, after standing Mr. Wingate up against his car in an effort to handcuff him, Dep. Fulford drew his asp.

17. Mr. Wingate did not cooperate in being handcuffed. Fearful, now, for his well-being, and in the confidence that his arrest was wrongful, he impetuously broke free and ran from the car against which he had been held by Deputy Fulford and a second deputy. The deputies gave chase, seized him, and placed him in handcuffs.

18. Dep. Fulford charged Mr. Wingate with obstruction of justice by use of threats and force, notwithstanding that Mr. Wingate made no threats and used no force against the deputies, and notwithstanding settled Virginia law that even where an underlying arrest is lawful – unlike the one Mr. Wingate faced – fleeing from officers attempting to effect an arrest does not constitute obstruction of justice.

19. No reasonable officer in Dep. Fulford's position could reasonably have believed that Mr. Wingate's actions in the face of his detention for refusing to give his name under the circumstances at issue could constitute obstruction of justice. Dep. Fulford's actions in this regard were wilful and in gross violation of clearly established state law.

20. After arresting Mr. Wingate, Dep. Fulford brought him to jail, where he stayed overnight. Dep. Fulford also caused Mr. Wingate's car to be towed and impounded.

21. Upon his release from jail, Mr. Wingate could not afford to pay the towing and impounding fees. His car remained in the impoundment lot incurring additional daily fees. This accumulating cost proved prohibitive for Mr. Wingate to pay, and as a result his car was repossessed by the lienholder.

22. In due course, Mr. Wingate went to court on the obstruction charge lodged by Dep. Fulford, at the same time as on the charge of refusal to give his name.  As the presiding judge did with the latter claim, after granting the prosecution's motion for *nolle prosequi* of the obstruction charge, he added, in the court's record: "Commonwealth will not bring these actions again."

23. Mr. Wingate suffered significant economic damage as a result of being jailed.  He incurred fees for the impounding of his car, lost his car, and lost his job as a result, rendering him unable to contribute to his family's support during the period of his unemployment.

## Causes of Action

### Count I:  Fourth Amendment Violation: Arrest for Refusal to Give Name

25. By detaining and arresting Mr. Wingate for failing to provide his name, as set forth in ¶¶4-15 above, Dep. Fulford unreasonably seized Mr. Wingate in violation of his Fourth Amendment rights.

### Count II:  False Arrest / False Imprisonment for Refusal to Provide Name

26. By arresting Mr. Wingate for failing to give his name, as set forth in ¶¶4-15 above, Dep. Fulford directly restrained his physical liberty without legal justification, amounting to false arrest or false imprisonment in violation of the common law of Virginia.

### Count III:  Malicious Prosecution for Refusal to Provide Name

27. Dep. Fulford's compelling Mr. Wingate to appear in court to answer the charge of unlawfully refusing to provide his name, as set forth in ¶¶4-15 *supra,* was devoid of any legal

basis under settled law. Mr. Wingate was innocent of wrongdoing in connection with the offense charged, which was brought against him with malice by Dep. Fulford for contempt-of-cop, for the collateral purpose of harassing him so as to teach him the lesson that when asked to jump by an officer, the sole acceptable response was "how high." The criminal proceedings set in motion by Dep. Fulford were terminated in Mr. Wingate's favor. Dep. Fulford thus maliciously prosecuted Mr. Wingate in violation of Virginia common law.

### Count IV: False Arrest / False Imprisonment for Obstruction of Justice

28. By arresting Mr. Wingate on the grounds of obstructing his unlawful arrest, as set forth in ¶¶16-23 *supra,* Dep. Fulford directly retrained his physical liberty without legal justification, amounting to false arrest or false imprisonment in violation of the common law of Virginia.

### Count V: Malicious Prosecution for Obstruction of Justice

16. Dep. Fulford's compelling Mr. Wingate to appear in court to answer the charge of obstruction of justice, as set forth in ¶¶16-23 *supra*, was utterly devoid of any legal basis. Under settled Virginia law, with the knowledge of which Dep. Fulford is charged, Mr. Wingate was within his rights to flee a wrongful arrest, and his flight did not constitute obstruction of justice. This piled-on charge was brought against him with malice by Dep. Fulford for the collateral purpose of harassing him so as to teach him the lesson that when asked to jump by an officer, the sole acceptable response was "how high." The criminal proceedings on this charge set in motion

by Dep. Fulford were terminated in Mr. Wingate's favor.  Dep. Fulford thereby maliciously prosecuted Mr. Wingate in violation of Virginia common law.

Wherefore, Mr. Wingate seeks the following relief:

* an award of compensatory damages in an amount appropriate to the proof at trial, separately for Counts I-III and Counts IV-V ;

* an award of punitive damages in an amount appropriate to the proof at trial, separately for Counts I-III and Counts IV-V

* an award of attorneys fees and costs; and

* such other relief as the court deems just.

Mr. Wingate requests trial by jury.

          Respectfully submitted,

          GEORGE WINGATE,

          By counsel

Dated:   July 30, 2018

Counsel for Plaintiff:

| //s// Victor M. Glasberg | //s// Maxwelle C. Sokol |
| --- | --- |
| Victor M. Glasberg, #16184 | Maxwelle C. Sokol, #89589 |
| Victor M. Glasberg & Associates | Victor M. Glasberg & Associates |
| 121 S. Columbus Street | 121 S. Columbus Street |
| Alexandria, VA  22314 | Alexandria, VA  22314 |
| 703.684.1100 / Fax: 703.684.1104 | 703.684.1100 / Fax: 703.684.1104 |
| vmg@robinhoodesq.com | vmg@robinhoodesq.com |

WingateGeorge\Pleadings\Complaint